# Daniel R. Kelly's Appeal.

A, a construction company, agreed to build a road for a railroad company and accept payment in bonds; A subsequently assigned its contract to B, an independent contractor, agreeing to secure for him, *inter alia,* rights of way. The railroad ratified this assignment and deposited a certain amount of bonds with a trust company, as security for B until his work was completed; it was stipulated, however, that these bonds would not be issued to B until certain bonds of a prior mortgage were paid by A. B worked on the construction until A failed to secure the right of way as agreed. A also failed to pay off the prior bonds, and the road was sold under the mortgage given to secure these bonds. The auditor appointed to distribute the fund arising from this sale, after paying the amount of the first mortgage bonds, distributed the balance *pro rata* among the holders of a certain number of the new bonds, under a modification of the terms of the agreement under which they were deposited, to which B was a party. B presented a claim to the auditor for bonds equivalent to the amount of work done. *Held,* that A having failed to pay off the first, B was not entitled to claim any new bonds; that B's remedy, if any, was against A.

(Argued January 13, 1888.   Decided January 23, 1888.)

July Term, 1887, No. 64, E. D., before PAXSON, STERRETT, GREEN, CLARK, and WILLIAMS, JJ.   Appeal from a decree of the Common Pleas No. 1 of Philadelphia County dismissing the exceptions to an auditor's report, disallowing a claim of D. R. Kelly, a contractor.   Affirmed.

The facts of the case are substantially as follows:   The Chester Construction Company contracted with the Philadelphia & Chester County Railroad Company, in consideration of a certain amount of stocks and bonds, to construct its road from Philadelphia to Chester; it was further provided in said contract that no payment should be made by the railroad company "until after all the outstanding 7 per cent bonds of the issue of

February 1, 1879, should be redeemed and the mortgage securing the payment of the same should be satisfied."

January 19, 1883, the construction company made a contract with D. R. Kelly, by which he was to construct the road; subsequently this contract was approved by the railroad company. By the terms of this contract it was agreed that the construction company would deposit with the Guarantee Trust & Deposit Company of Philadelphia, *inter alia,* $500,000 of the first mortgage 6 per cent bonds of said Philadelphia & Chester Railroad Company, "to be held for the security of the contractor until the work of building the road should be completed."

The construction company further agreed to furnish the contractor with all rights of way for the construction of said road and to hold him harmless from any damages.

The bonds were subsequently deposited with the trust company and an agreement was signed by all the parties, which is set forth in the auditor's report, *infra.*

Under this agreement it was the duty of the construction company to pay off the $13,000 mortgages.

Work was begun by Kelly in March, 1883, and continued until June, when it ceased because he was not furnished with money or bonds or right of way.

Subsequently, both the construction company and the railroad company became insolvent and released each other from all claims.

The trust company, at the request of the holders of over 60 per cent of the 7 per cent bonds, filed a bill asking the court to decree a sale of the mortgaged road by reason of a default in the payment of the interest. The property and franchises of the railroad company were sold in accordance with a decree to that effect, and the trustee filed an account showing a balance in his hands, after paying all costs, of $36,661.25, which was referred to an auditor for distribution.

Before the auditor Kelly presented a claim for a portion of the bonds in the hands of the trust company, equal in amount to the work performed for the construction company.

The auditor disallowed this claim, filing the following report:

The contention of Mr. Kelly and his assignees is that he entered upon the performance of his work under the contract the construction company made with the railroad company, and

which had been assigned to him, and continued to perform his contract until forced to suspend operations by reason of the inability on his part to receive payment as provided in the contract. He claims, therefore, to be entitled to the following amount:

| | | |
|---|---:|---:|
| Monthly estimates of chief engineer, for March and April, 1883 | $40,476 | 10 |
| Estimates for May, 1883, and to June 25, 1883, per copy produced | 26,000 | 00 |
| | $66,476 | 10 |

Credit.

| | | | |
|---|---:|---:|---:|
| Cash from construction company | $5,400 | | |
| Cash from Faulkner | 4,076 | | |
| | | 9,476 | 00 |
| | | $57,000 | 10 |
| 26 bonds, 6 per cent, at 50 per cent | | 13,000 | 00 |
| Balance due | | $44,000 | 10 |

—or 88 bonds at 50 per cent, per contract.

A dividend is claimed upon 88 bonds of $1,000 each.

In 1883 certain bonds of the par value of $500,000 were deposited by the Philadelphia & Chester County Railroad Company with the Guarantee Trust & Safe Deposit Company, under certain conditions set out in the agreement entered into by the Chester Construction Company, Daniel R. Kelly, and the Philadelphia & Chester County Railroad Company. That agreement provided for the delivery of these bonds under certain conditions. One of these conditions was:

"That it is distinctly understood and agreed by and between the parties to this agreement that there is still outstanding $13,000 in first mortgage bonds issued under a preceding mortgage to that under which the bonds deposited as herein stated were issued, which are to be redeemed, turned over to the said Guarantee Trust & Safe Deposit Company, trustee of the mortgage covering the same, and the said mortgage satisfied of record, before any part of said deposited $500,000 in bonds is paid over or delivered to the said Daniel R. Kelly, or to anyone in his behalf."

The interest of Mr. Kelly under that contract has been made

the basis of the claim here. His right to claim here must be either upon an actual delivery to him of bonds or the right established to demand delivery.

The deposit was made by the railroad company, according to the terms of the contract. The bonds were subject to the order of Mr. Kelly upon the performance of certain conditions by the Chester Construction Company. If they were not performed, his remedy was against that company. It was one of the elements of the general contract, between Mr. Kelly, the construction company, and the railroad company, that before the bonds could be delivered, a prior mortgage should be satisfied of record. It was the construction company that was to secure those interests. The trustee held the bonds, upon the condition, and had no right to deliver them so as to pass any ownership in them to Mr. Kelly until the condition had been performed. The bonds, therefore, were never constructively or actually the property of the Chester Construction Company or Mr. Kelly.

The railroad company was subsequently sold with these bonds undelivered, and at the time of sale, no right established against it by Mr. Kelly.

By the sale it became impossible for the construction company to perform its part of the contract, and its right to any bonds disappeared. The right of Mr. Kelly to the bonds was determined at the same moment, because he could only obtain them through the performance by the construction company of its contract. His remedy is against the construction company for any wrong that he has suffered from its acts.

The railroad company has not failed in any of its obligations, but the construction company has; and Mr. Kelly's right to any bonds being dependent upon the conditional acts which were not performed and cannot be performed by the construction company, no right remained in Mr. Kelly to enforce any claim for bonds against the railroad company. No right to demand delivery has been shown; Mr. Kelly has no claim then, either against the railroad company or its specific bonds, which can now or can hereafter be made enforceable.

The modification agreement, and the delivery to the company of 50,000 bonds for certain parties, does not alter the force of the principles laid down, nor disturb the binding character of the agreement upon the bonds which remained in the hands of

the trustee. Mr. Kelly was a party to the modification, and obtained benefits from it, and was bound by it.

The railroad company appears to have carefully guarded against rendering itself liable to pay out its bonds without securing an equivalent in work; and your auditor cannot find through all the testimony a waiver or anything tantamount to a waiver on its part of the performance of the condition on the part of the construction company and Kelly, that the $13,000 outstanding 7 per cent bonds should be retired. The principal men in the railroad company were largely interested in its completion, and appear to have been willing to and did assist in various ways in aiding the construction company and Kelly in performing their contract; but they likewise appear to have been just as cautious in not officially committing themselves to do more than their contracts called for. Your auditor so views, for instance, their action in releasing $50,000 of the $500,000 bonds deposited with the Guarantee Trust Company and their efforts to assist in obtaining the rights of way; they neither waived nor decreased any rights of their own, nor enlarged those of Mr. Kelly or the construction company, nor released them from any of their obligations.

Your auditor cannot reform or amend the contracts these parties solemnly made; and he must pass upon them as he finds them. He is of opinion that neither Mr. Kelly nor any assignee of his has any right to any of the bonds whether considered issued or not issued by the railroad company, now held by the Guarantee Trust Company, and all said claims are disallowed.

The entire fund was awarded to the holders of the 7 per cent bonds and to the holders of the coupons of the 6 per cent bonds.

To this report Kelly filed the following exceptions:

1. Because the learned auditor erroneously found that all the bonds under the modified agreement of May 16, 1883, had been paid over, when in fact but fifty bonds had been withdrawn, thirty-four of which were given to the railroad company and retained by it;

2. Because the learned auditor erred in holding that by the agreement of the 16th day of May, 1883, Kelly was debarred the right to claim upon the bonds which had been deposited with the trust company and delivered as security for the work performed and materials furnished by claimant;

3. Because the learned auditor erred in holding that the sum of $13,000 referred to in the agreement of the 16th day of May, 1883, was not the obligation of the railroad company, when in fact it was the balance of the first mortgage 7 per cent bonds issued by the railroad company, the first lien upon the road, and paid out of the fund in court for distribution;

4. Because the learned auditor erred in not holding that the claim of Kelly was only postponed by the agreement of the 16th day of May, 1883, the bonds having been issued and delivered for the security of the contractor and the work performed in accordance with the contracts;

5. Because the learned auditor erred in not holding that the conditions of the agreement of January 19, 1883, had been waived by the parties thereto, the railroad company and the construction company having mutually released each other from all claims of every kind by releases, dated the 25th day of June, 1884;

6. Because the learned auditor erred in holding that the railroad company had not failed in any of the obligations, and that the bonds deposited were neither constructively nor actually the property of the contractor, Kelly;

7. Because the learned auditor erred in disallowing the claim of D. R. Kelly, contractor.

The court dismissed these exceptions and after a modification of the report, that is not material in this case, entered a decree in accordance with the auditor's opinion.

Kelly appealed, assigning for error the dismissal of the exceptions, and the decree of the court.

*Thomas W. Barlow* and *Charles C. Lister,* for appellant.— The fund for distribution resulted entirely from the work and labor done and the material furnished by the contractor; and, as the proceeding was an equitable one, the contractor's right to share the products of his own labor rests upon substantial grounds. The bonds only acquired a value from his efforts and the expenditure of his money. It matters not whether he could have pursued his remedy in another county; it does not affect his right. The road being wiped out of existence, it was impossible for him to proceed. Shamokin Valley & P. R. Co. v. Malone, 85 Pa. 25.

The assets of an insolvent corporation are a fund for the pay-

ment of its debts; and a court of equity will enforce this trust in favor of creditors, against the holders of such assets. Id.

The Guarantee Trust Company had no interest whatever in the securities so deposited and delivered for Kelly's security.

The trustees are not to be regarded as agents of the purchasers of the bonds and mortgages assigned to them. No consideration proceeds from them. They were mere assignees of those securities, coupled with no interest, in trust, to hold them as security for the payment of all the mortgage bonds that should thereafter be sold or negotiated by the company. Whoever purchased the mortgage bonds became purchasers of the bonds and mortgages so assigned as security for their payment, or of an equitable right to hold them as security. Johnson County v. Thayer, 94 U. S. 631, 24 L. ed. 133.

*J. Levering Jones* and *George L. Crawford,* for appellees, relied upon the report of the auditor.

PER CURIAM:
The appellant has failed to convince us that the decree of the court below was erroneous. The bonds upon which he claimed a dividend were never delivered to him, nor was he at any time entitled to demand their delivery. This appears so clearly from the report of the learned auditor that we may well be excused from adding anything to what he has said.

Decree affirmed and the appeal dismissed, at the costs of the appellant.